# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS


ROSALIE N. KENNEDY,

                Petitioner,         :    Case No. 2:20-cv-2979

    - vs -                       District Judge Sarah D. Morrison
                                  Magistrate Judge Michael R. Merz

WARDEN, Marysville
  Reformatory for Women,

                           :
                Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus action brought *pro se* by Petitioner Rosalie Kennedy to obtain relief from her conviction in the Logan County Court of Common Pleas for murdering her husband and consequent sentence of life imprisonment. Relevant filings include the Amended Petition (ECF No. 6), the State Court Record (ECF No. 20), the Return of Writ (ECF No. 21) and Petitioner's Reply (ECF Nos. 34, 34-1, 34-2, 34-3, 34-4, and 34-5).

Upon examination of the Reply, the Magistrate Judge noted it was 320 pages long and that there was no evident organization to it. In order to enable the Court to deal with the Reply, the Magistrate Judge ordered Petitioner to file an index to it (ECF No. 35). In response, Petitioner has filed a forty-three page document which includes the ordered index plus "Clarifications of the Reply," a drawing purporting to show connections between all parties involved in this case, a motion to amend the petition, sixteen pages of amendments to be made to Petitioner's July 24,

2020, filing (ECF No. 10), and eighteen pages of amendments to be made to Petitioner's September 14, 2020, filing (ECF No. 13).

**Petitioner's Motions to Amend and the Statute of Limitations**

Kennedy's conviction became final on direct appeal on May 21, 2019, when her time to file a petition for writ of certiorari with the United States Supreme Court expired. The one-year statute of limitations under 28 U.S.C. § 2244(d) began to run on that date and would have expired one year later on May 22, 2020, if nothing intervened to toll the statute. The statute was tolled by Kennedy's filing of a petition for post-conviction relief under Ohio Revised Code § 2953.21 on March 22, 2019 (State Court Record, ECF No. 20, Ex. 51) and continued to be tolled until thirty days after the dismissal of that petition or until July 11, 2019, the date on which Kennedy was last able to appeal from dismissal of the post-conviction petition. This extends the statute of limitations to July 12, 2020.

Respondent does not raise a statute of limitations defense to the initial filing, treating the Amended Petition as properly filed when deposited in the prison mailing system on June 5, 2020 (Return, ECF No. 21, PageID 2631). However, the pendency of a habeas corpus petition does not itself toll the statute as to later amendments. *Duncan v. Walker,* 533 U.S. 167 (2001).

On July 24, 2020, Kennedy filed[1] what she captioned as a Motion for Reduced Number of Copies (ECF No. 9) along with what the Clerk docketed as a letter (ECF No. 10), but which asks that her Amended Petition be amended again by adding "the enclosed Addendums and

---

[1] The postmark on this filing shows it was mailed July 24, 2020. The document does not include a declaration by Kennedy of when she deposited it in the prison mail system.

2

Amendments," presumably the attachments to the Motion for Reduced Number of Copies (i.e., PageID 138-473).

Then on September 14, 2020, Petitioner filed what the Clerk has also docketed as a letter from petitioner, but what she apparently intended to be further amendments and addenda to the Petition (ECF No. 13). She says in the body of the document that she assumes it is timely because she had received word from the Court that the Attorney General requested and was granted additional time to file a return. *Id.* at PageID 479.

Petitioner's instant Motion to Amend does not constitute a proposed amended petition, but instead lists various pages from prior filings to be somehow added to her Petition (ECF No. 36, PageID 3045).

Because Petitioner did not caption the first two documents as motions to amend, Respondent was not on notice to treat them in that manner. However, a District Court may raise the limitations issue *sua sponte. Day v. McDonough*, 547 U.S. 198 (2006)(upholding *sua sponte* raising of defense even after answer which did not raise it); *Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002).

The statute of limitations is also subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 646 (2010). In the exercise of its discretion, the Court will treat the statute of limitations as equitably tolled from July 12, 2020, until July 24, 2020, when Kennedy filed her first set of "addendums and amendments" (ECF No. 9). However, the Court declines to extend equitable tolling to the two later filings on September 14, 2020, and May 3, 2021. Therefore the Amended Petition will be treated as amended to include the new claims made on July 24, 2020, but not those offered later.

**Litigation History**

On March 10, 2017, Gary Kennedy was shot to death in the kitchen of his home. Four days later the Logan County grand jury indicted Petitioner Rosalie Kennedy, Gary's wife, on one count of murder and one count of felonious assault, both with firearm specifications (Indictment, State Court Record, ECF No. 20, Ex. 1). The case was tried to a jury which found Kennedy guilty on all counts. *Id.* at Ex. 31. After denial of Kennedy's motion for acquittal or new trial, the trial judge merged the murder and felonious assault counts and the two firearm specifications under Ohio Revised Code § 2941.25 and sentenced Kennedy to eighteen years to life imprisonment. *Id.* at Ex. 40.

Represented by new counsel, Kennedy appealed to the Ohio Third District Court of Appeals which affirmed the conviction and sentence. *State v. Kennedy,* 2018-Ohio-4172 (Ohio App. 3rd Dist. Oct. 15, 2018), appellate review declined, 154 Ohio St. 3d 1510 (2019). Kennedy then filed her petition for post-conviction relief which was denied by the trial court on June 11, 2019. Kennedy failed to file a timely appeal from that denial and her effort to reopen the time for appeal was rebuffed at both the trial and appellate levels because Ohio does not allow delayed appeal in civil cases.

Kennedy's Amended Petition pleads the following Grounds for Relief:

> **Ground One**: Trial counsel was ineffective under the 6th and 14th Amendments of the Constitution in failing to file a motion to suppress statements made to Detective Watson, which were obtained in violation of the 5th Amendment (Miranda) because I was not told the consequences of providing a custodial statement. (Exhibits A1 and A2 and C).
> *
> **Ground Two**: It was plain error under Crim.R. 52 to admit my videotaped statement, as it was in violation of the 5th Amendment.
> *
> **Ground Three**: Defense counsel's failure to challenge the admission of the videotaped statements I made in the sheriff's car which were secretly recorded violated my 6th Amendment and 14th

Amendment rights. (Effective assistance of counsel and due process). (Exhibit C)
*
**Ground Four**: The trial court erred in failing to instruct the jury on negligent homicide.

**Supporting Facts**: The trial court failed to instruct the jury on negligent homicide, and denied me a complete defense under the 6th and 14th Amendments of the Constitution. This violated my right to a complete defense.
*
**Ground Five**: The trial court should have allowed into evidence petitioner's offer to take a polygraph, so that petitioner could present a complete defense under the 6th and 14th Amendments of the Constitution.
*
**Ground Six**: The State presented insufficient evidence that the petitioner purposely killed her husband.
*
**Ground Seven**: The conviction for murder was against the manifest weight of the evidence.
*
**Ground Eight**: The prosecution, nor the police did not disclose the fact that the tape from the police cruiser was recorded on a deputy's personal recorder; and was not recoded [sic] with department issued equipment, until he was testifying at petitioner's trial; in violation of her 5th and 14th Amendment rights. This evidence was impeachable and shows that the deputies were willing to ignore protocol to obtain a criminal case.

Further, when deputy's (Dixon) actions in recording petitioner substantially deviated the from the policies and procedures of the Logan County Sherriff's Department, he was violating the 4th Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, which protects a person's right to an expectation of privacy against unreasonable governmental intrusion. Deputy Dixon's actions were so far afield of the Logan County Sherriff's Department policies and procedures that he was no longer acting within the scope of his employment because he was acting in violation of state and federal wiretapping laws See Exhibit B: Logan County Sherriff's Office Policy & Procedures manual.
*
**Ground Nine**: Trial counsel refused to allow the petitioner to testify in her own defense, when petitioner requested to do so.

Petitioner knew that she would be testifying because early in the preparations for trial, counsel had stated that she would question petitioner hard to make sure she was ready to testify. Counsel never asked what happened on the night in question. About a week before trial petitioner asked counsel why didn't she want to hear what really happened and that they needed to start talking about it. Counsel said okay, let's hear it. A little more than halfway through petitioner's accounting of that night's events, she was abruptly stopped by counsel and told that the prosecutor would rip her apart and under no circumstances was petitioner going to take the stand. She then stated that she had this case taken care of. She wasn't going to put petitioner through hell, she repeatedly told petitioner it would be like walking through fire. She reasoned that the prosecutor would twist everything that was said to make petitioner guilty in the eyes of the jury. Counsel had gone to petitioner's home every night, working out how she thought those events would have played out. Counsel concocted her own version of what happened and that was the version she wanted to present. Petitioner was told repeatedly not to talk to anyone about her case or write anything down, that someone could read it and "snitch" and it would be used against petitioner. By not allowing petitioner to testify in her own defense trial counsel was clearly violating her 6th and 14th Amendment rights.

*

**Ground Ten**: Trial counsel failed to submit as evidence: photos from the Logan County Sheriff Department showing petitioner's badly bruised wrists and forearms and bruising on her back. While the correction officer was photographing her back, petitioner told the officer that she had a large sore lump on the back of her head, the officer checked it and said it wouldn't show up in a photo, so none was taken.

**Supporting Facts**: Counsel failed to subpoena Logan County Correction officers as witnesses to the fact that [sic] couldn't swallow or talk at all the first day after incarceration and she had great difficulty speaking and swallowing for the next four or five days.

Trial counsel had in her possession a copy of a recorded visit of petitioner with her two daughters at the Logan County jail, on March 14, 2017, four days she was incarcerated. It was clearly evident how hoarse petitioner's voice as she struggled to speak to be heard at all. Counsel allowed petitioner's daughters to listen to this recording and still she failed to submit it as evidence for the defense, which would've verified the damage that was done to her larynx. Petitioner told trial counsel that she knew she had either fractured or broken ribs, counsel did nothing to prove it to show as evidence for the

6

defense. No witnesses were asked to testify, no photos and no recordings were submitted as evidence to show that petitioner was also a victim that night, which would've corroborated the testimony of the petitioner. Trial counsel clearly suppressed all this evidence and violated petitioner's 6th and 14th Amendment rights.

*

**Ground Eleven**: Trial counsel requested at trial to see petitioner's shirt which had blood stains on the back of the shoulder, the prosecution stated that if the defense wanted the shirt, the defense should have subpoenaed it. Trial judge Goslee ruled that the prosecution did not have to provide this evidence. Counsel for the defense failed to enter the shirt and bra as evidence which would have helped prove to the jury that it would have been improbable for the defendant (or petitioner) to have shot her husband since the blood was on the back of the shirt. Also the blood would have soaked through to the bra which would have verified that the shirt had been worn correctly and was not worn turned around with the back in front. The blood was not on the front of the shirt. The expert testified that the gunshot wound could have been self-inflicted which meant he was shot at close-range which would also mean that the blood splatter would've been on the front of the shirt and not on the back if the defendant had shot him. Trial counsel failed to subpoena these articled of clothing which would have been an integral part of proving petitioner's innocence, which clearly violated her 6th and 14th Amendment rights.

*

**Ground Twelve**: Trial counsel failed to subpoena any character witnesses for petitioner. Counsel should have established that petitioner was and had always been a good person and not a violent one either. There were friends, neighbors and even relatives of the victim that petitioner had cooked for and helped following their surgeries. Church members, the minister and his wife would have testified to how much petitioner helped at the church and parsonage with landscaping and cooking for the minister and church gatherings. These people would have gladly testified on petitioner's behalf. Counsel subpoenaed petitioner's two daughters that had to sit outside the courtroom until into the fourth day of trial, counsel decided that she had the trial under control and she didn't need to call the daughters as witnesses and that she'd have petitioner home for Thanksgiving. No witnesses were asked to testify on petitioner's behalf which further allowed the prosecution to taint her image to the jurors, thereby trial counsel clearly violated her 6th and 14th Amendment rights.

*

**Ground Thirteen**: Forty minutes before the pre-trial hearing, petitioner met with Tina McFall, which was co-counsel. McFall had

arrived early to deliver an ultimatum to petitioner: either petitioner fires her primary counsel, Mrs. Schregardus, or Ms. McFall would quit and walk away from the case stating that she had done all the work. Minutes later, at the pre-trial hearing Ms. McFall requested a meeting with Judge Goslee (trial judge) and with Mrs. Schregardus (primary counsel). Within minutes, Mrs. Schregardus walked out with tears in her eyes. She requested to speak with petitioner. Mrs. Schregardus told petitioner that she was having to resign from this case because Ms. McFall had dome [sic] more of the work on this case than she had. Petitioner was left without the only counsel she had actually hired and had no say in the matter, which violated her 6th and 14th Amendment rights.

\*

**Ground Fourteen**: Trial counsel failed to use the funds that were allotted by Judge Goslee to hire an expert that would have explained the psychiatric and trauma aspects of petitioner on the night in question. Petitioner had no memory of those events when she was charged with her husband's murder. She remembered finding her husband on the floor, him dying and her performing CPR on him, trying to resuscitate him but he didn't respond. These facts were on the 911 call and the questioning with either the detective at the jail in Logan County at the Sheriff's Department, which were evidence at the trial. Petitioner did not remember the 911 call. Petitioner's memory returned five days after she was incarcerated. On the 911 call, that she had no memory of making it sounded as though petitioner was drunk, but her words were not slurred, she had (sic) forming any and all words. Later, on the 911 call, petitioner kept using the F--- word which was highly uncharacteristic of her as character witnesses would have verified. Trial counsel told petitioner that her memory was not reliable. During the trial, the expert for the gunshot wound testified that the bullet hit Mr. Kennedy's collar bone then travelled down, nicking hiss aorta, which caused him to die within one to two minutes at the most. This information confirmed that she'd told counsel, that her memory was reliable, counsel said that it wasn't needed now.

Trial counsel did not even attempt to hire (the already funded) expert to explain to the petitioner, jury and everyone in the courtroom what the effects of undue and extreme stress, trauma and probably hypothermia would have on a person, all which petitioner had experienced. Petitioner's husband had just died in front of her, she didn't know he had been shot. She performed CPR on him attempting to revive him, she struggled to call 911, then continued CPR on her husband. She was then placed in a deputy's cruiser at 19°F outside for an extended period of time, she was wearing a thin T-shirt and pajama pants as her only protection from the cold. On

the deputy's recording she was heard to beg over and over for heat, a blanket or jacket. An expert could have testified the effects these conditions could have on a person such as loss of memory, loss of speech, loss of focus, clouded thinking and even hallucinations are just a few. That testimony could have greatly aided in giving credibility to petitioner's loss of memory, speech and uncharacteristic behaviors she exhibited and help vindicate her in the eyes of the jury. Trial counsel prevented this, violating her 6th and 14th Amendment rights.

*

**Ground Fifteen**: Deputies took pictures and search petitioner's home, without a warrant or consent to search, which was in violation of petitioner's 4th and 14th Amendment rights. These same pictures were then presented as evidence at petitioner's trial. Who obtained them and when they obtained them was not disclosed until the deputy was testifying. This violated petitioner's 6th and 14th Amendment rights.

*

**Ground Sixteen**: Defense co-counsel Marc Triplett did not reveal to the petitioner, Rosalie Kennedy, that he had represented the victim in her case (Gary Kennedy), in a domestic violence case previously in which the petitioner was their opposition, this information was given to petitioner just days before her trial commenced. This was in violation of 6th and 14th Amendment rights.

*

**Ground Seventeen**: Prosecutors withheld the DNA (touch) results from the gun fired in this case. While the prosecutors did admit that the petitioner's DNA was not found on the gun, they refused to disclose whose DNA was found on the gun, violating the petitioner's 5th, 6th and 14th Amendment rights. They withheld exculpatory evidence that could have proven the petitioner innocent, and not guilty of firing the gun in this case. This also prevented her from presenting a full defense and was a clear violation of due process.

*

**Ground Eighteen**: Mr. Stephen Hardwick, Assistant Public Defender, failed to add vital facts, (Grounds 8-16) in the post-conviction petition even though petitioner requested this to be included. This petition was denied and Mr. Hardwick failed to file the appeal in a timely manner. He totally missed the deadline which violated petitioner's 6th and 14th Amendment rights.

*

**Ground Nineteen**: The trial court erred by not instructing the jury on the lesser included offenses of Involuntary Manslaughter and

Reckless Homicide, in violation of petitioner's 6th and 14th Amendment rights.

(ECF No. 6).  In her later filing on July 24, 2020, Petitioner added the following claims:

**Ground Twenty A:**  The trial judge, William Goslee, used an abuse of discretion by not recusing himself as the judge for Petitioner's case.  Judge Goslee had served as the prosecutor on a previous domestic violence case between the victim (Gary Kennedy) and the petitioner (Rosalie N. Kennedy).  This violated Petitioner's 6th Amendment right to a fair trial by preventing her case from being heard by an impartial judicator [sic].  This also violated her right to Due Process under the Fourteenth Amendment.

**Ground Twenty B:**  During jury selection, trial judge boasted to a prospective juror, Mr. Minahan, that along with Mr. Tom Minahan he also knew the prosecutor's sister, due to his having practiced under her.  Prosecutor Ms. Bond was or is a Magistrate of Union County.  This should not have been allowed.  At this point this should have been discussed between [sic] all parties, defense, judge, and prosecution to discuss this familiarity between the trial judge and the prosecutor.  It was not even mention [sic].

**Ground Twenty C:**  During jury instructions, Judge Goslee told the jury several times that the verdict would have to be unanimous as to guilt or lack of it, that they had to agree unanimously whether the State did or did not prove.  This is against a U.S. citizen's rights under the Constitution.  The verdict would have to be unanimous to convict a person of a serious offense.  This is NO way applies to finding a person not guilty of that serious offense. . . . The verdict for Not Guilty does not need to be unanimous.  This was in violation of Petitioner's 6th and 14th Amendment rights.

**Ground Twenty D**:  Violation of Petitioner's right to choose her own counsel, forcing her to accept appointed counsel.

**Ground Twenty E:**  During the interview and video of Detect [sic] Watson, of the Logan County Sheriff's Department, in which he interrogated petitioner, it was found that the prosecution was attempting and succeeding to remove Petitioner's requests for an attorney, her offer to take a polygraph, and the statement made by Detective Watson "so it's either self-defense or suicide."  The trial judge abused his discretion in excluding these portions of the recording and this left the jury with insufficient evidence to convict.

**Ground Twenty F:**  Petitioner was offered the opportunity to plead guilty to manslaughter which carries a sentence of from three to

eleven years. Her attorney told her that, given Judge Goslee's reactions to the case, he would probably impose an eleven year sentence. [Petitioner rejected the plea deal.] Neither counsel nor the trial judge explained that the judge would probably impose a three year sentence because of her record. With that explanation, Petitioner would have accepted the plea deal. These facts constitute ineffective assistance of trial counsel and denial of an impartial judge.

**Ground Twenty G:** Judicial bias demonstrated by interrupting defense counsel's cross-examination of Detective Watson.

**Ground Twenty H:** Juror No. 3 had notified the court of her plans to fly from Dayton at 8:30 p.m. on the Friday on which deliberations concluded. By not replacing her with an alternate, Judge Goslee pressured the jury to reach a verdict quickly.

**Ground Twenty I**: The trial judge and prosecutor attempted to dissuade defense counsel from obtaining documents relating to the 1997 case against Gary Kennedy.

**Ground Twenty-One A:** Failure to excuse a biased juror, Mr. Sita, in violation of Petitioner's Sixth Amendment rights.

(ECF No. 9).

# Analysis

## Ground One: Ineffective Assistance of Counsel for Failure to File a Motion to Suppress Petitioner's Statement to Detective Watson

In her First Ground for Relief, Petitioner asserts she received ineffective assistance of trial counsel when her attorney did not move to suppress her statement to Detective Watson. The Warden defends this claim on the merits, arguing this Court should defer to the decision on the Third District Court of Appeals on this issue. Kennedy presented this issue as her First Assignment of Error on direct appeal and the Third District decided it as follows:

**First Assignment of Error**

 [*P30]  In Kennedy's first assignment of error, she argues that she received ineffective assistance of trial counsel. Specifically she contends that her trial counsel was ineffective for failing to file a motion to suppress the statement Kennedy gave to Detective Tom Watson at the jail. She argues that the Miranda warnings given to her prior to the interview were incomplete and the resulting interview would thus have been inadmissible.

**Standard of Review**

 [*P31]  "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced [her]." *State v. Hernandez*, 3d Dist. Defiance Nos. 4-16-27, 28, 2017-Ohio-2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1-15-43, 2016-Ohio-3105, ¶ 11, citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, 836 N.E.2d 1173, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

 [*P32]  Counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65, 873 N.E.2d 858, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52 (2000). The failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made. *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11. However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if "'the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act.'" *Brown* at ¶ 11, quoting *State v. Edwards,* Cuyahoga No. 69077, 1996 Ohio App. LEXIS 3033, 1996 WL 388761 (July 11, 1996), citing *State v. Martin*, 20 Ohio App.3d 172, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

[*P33]  Moreover, in evaluating deficient performance for failure to file a suppression motion, the court must consider whether counsel made a tactical decision. *State v. Madrigal*, 87 Ohio St.3d at 389. "Evidence that counsel fully investigated the case is relevant in this deficiency evaluation." *State v. Spring*, 7th Dist. Jefferson No. 15 JE 0019, 2017-Ohio-768, ¶¶ 19-20, 85 N.E.3d 1080.

**Argument and Analysis**

[*P34]  On appeal, Kennedy contends that the oral explanation of her *Miranda* rights at the beginning of her interview at the jail omitted the advisement that anything Kennedy stated in the interview to the officers could be used against her at trial. She contends that without this pivotal admonition, her statement was subject to suppression and would not have been admissible at trial.

[*P35]  At the outset, we note that at the beginning of her interview at the jail, Detective Tom Watson gave Kennedy a written explanation of her rights and indicated that she could read along with him. Kennedy got out her glasses and appeared to read the paper even as Detective Watson explained that at any time she could elect to stop talking to him. Detective Watson clearly explained to Kennedy that she had the right to remain silent, the right to talk to a lawyer before they asked her any questions, and that a lawyer would be appointed for her if she could not afford one.

[*P36]  It is true that in the oral recitation of Miranda rights, Detective Watson did not explicitly state that anything Kennedy said could be used against her in court. However, Kennedy can be seen in the video signing a written waiver of her rights, but that waiver was never introduced into evidence because the admissibility of the interview was never challenged. Nevertheless, the parties seem to be in agreement at oral argument that the written waiver was also deficient.

[*P37]  Even assuming that the written waiver of rights similarly omitted the statement, the record clearly indicates that at trial, defense counsel wanted the jail interview to be played to the jury so that the jury could hear Kennedy's story without her being subject to cross-examination. In fact, defense counsel stipulated to the interview's admissibility and used it in crafting Kennedy's defense strategy.

[*P38]  Through the interview, Kennedy was able to present information that she gave to the police that was favorable to her, like

13

that Gary had hit her in the past and that he had issues with Vietnam. Kennedy also repeatedly denied remembering what happened in the interview, leading to defense counsel's argument that she could not have acted purposely if she could not even remember.

[*P39] Thus through the interview, Kennedy was able to present a statement to the jury about the event in question without having to be subject to cross-examination—a statement that was used in crafting her defense. Defense counsel leaned heavily on Kennedy's purported lack of memory in trying to argue that she did not purposely kill her husband. In closing arguments, she indicated there was no point in calling Kennedy to the stand because if the jury did not believe Kennedy did not remember what happened at the time of the interview, they would not believe her at trial stating the same thing.

[*P40] The Supreme Court of Ohio has found that a tactical decision by trial counsel to not challenge a police interview in order to allow a defendant's explanation of events does not constitute ineffective assistance of counsel. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 117, 873 N.E.2d 1263, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶¶ 32-34, 817 N.E.2d 29. This appears to be precisely what took place here. We cannot find under these circumstances that trial counsel was ineffective merely because the strategy ultimately proved unsuccessful. Therefore, Kennedy's first assignment of error is overruled.

*State v. Kennedy, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

According to Kennedy's Index, the pages of her Reply which address Ground One are

PageID 2755-61 (See ECF No. 36, PageID 3038). In those pages Kennedy argues inconsistently. She insists that the record shows she was not properly advised of her *Miranda* rights and indeed the Third District found the oral advisement was defective. As to the written advisement, it was not of record, so it could not be assessed by the Court of Appeals. So it is possible that a motion to suppress would have been successful.

But Kennedy does not speak at all to the Third District's ultimate conclusion that admitting the recording was a way to get Kennedy's version of events before the jury without subjecting her to cross-examination. Instead she argues that the recording should not have been redacted to remove her requests for an attorney, her request to take a polygraph examination, or Detective Watson's comment that it was self-defense or suicide. Petitioner has referred the Court to the transcription of the audio portion of the tape which appears at State Court Record, ECF No. 20-4, PageID 2158-88; she has not referred the Court to any rulings excluding any portions.

Her offer to take a polygraph would not be admissible whether it came from the recording or from her on the stand. *State v. Souel,* 53 Ohio St. 2d 123 (1978), sets standards for admission in Ohio. The Supreme Court has acknowledged there remains no scientific consensus on reliability and has held there is no constitutional right to have results admitted at trials. *United States v. Scheffer*, 523 U.S. 303 (1998). Detective Watson's comment was properly excludeable because he had not been qualified as an expert on cause of death.

Kennedy then argues that the recording was not admissible under the Ohio Rules of Evidence as an exception to the hearsay rule (Reply, ECF No. 34, PageID 2757). While it is not the province of this Court to consider violations of the Ohio Rules of Evidence because they are not binding under the United States Constitution, the recording was admissible because it was not hearsay, but rather admissions of a party opponent. Ohio R. Evid. 801(D).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome

confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland,* 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The Third District reasonably found that trial counsel's decision to get Kennedy's side of the case before the jury by not suppressing the interview was a tactical decision and not deficient performance. Accordingly, that court's decision of the First Assignment of Error was neither contrary to nor an objectively unreasonable application of *Strickland*. Ground One should be dismissed with prejudice.

**Ground Two:  Violation of Fifth Amendment by Admitting the Recording**

In her Second Ground for Relief, Kennedy argues it was plain error to admit her recorded statement. Second guessing trial counsel, her appellate attorney raised this claim as the Second Assignment of Error on appeal which the Third District decided as follows:

> [*P41]  In Kennedy's second assignment of error, she argues that it was plain error to admit Kennedy's videotaped interview at the jail into evidence, even though the issue was not raised by defense counsel.
>
> **Standard of review**
>
> [*P42]   "[T]he plain error test is a strict one: '[A]n alleged error "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise."'" *State v. Murphy*, 91 Ohio St.3d 516, 2001-Ohio-112, 747 N.E.2d 765, quoting *State v. Campbell,* 69 Ohio St.3d at 41, 630 N.E.2d at 345, quoting *State v. Long,* 53 Ohio St.2d 91, 7 Ohio Op. 3d 178, 372 N.E.2d 804 (1978), paragraph two of the syllabus. The Supreme Court of Ohio has "warned that the plain error rule is not to be invoked lightly." *Murphy* at 532. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long at paragraph three of the syllabus.
>
> [*P43]   Moreover, under the plain error standard, "'the defendant bears the burden of demonstrating that a plain error affected his substantial rights'" and "'[e]ven if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice."'" (Emphasis sic.) *State v. Hartley,* 3d Dist. Hancock No. 5-14-04, 2014-Ohio-4536, ¶ 10, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14, 802 N.E.2d 643, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, (2002), and *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.

**Analysis**

[*P44]  As we have already noted, defense counsel employed the interview at the jail as part of the trial strategy in this matter. We found no ineffective assistance of counsel for the failure to seek suppression of the interview in this matter. Similarly, we cannot find that it was plain error to introduce the interview into evidence when the defense stipulated to its admissibility to use it as part of trial strategy. For these reasons Kennedy's second assignment of error is overruled.

*State v. Kennedy, supra.*

The Warden defends this Ground on the merits and in the alternative asserts it is procedurally defaulted (Return, ECF No. 21, PageID 2646-50).   The Index instructs that the applicable portions of the Reply are at PageID 2762-64 which are filed at ECF No. 34 and 34-1.

Ground Two asserts, in essence, that the trial judge should have suppressed the *Miranda* recording even without counsel's objection and in fact in the face of counsel's stipulation to admissibility as a tactical matter.   *Miranda* violations, like other police errors, can be waived by the defense, and that is what happened here.   This Court should defer to the Third District's decision and dismiss Ground Two on the merits.   No discussion of procedural default is necessary here.

**Ground Three:   Ineffective Assistance of Counsel for Failure to Challenge Statements Recorded in the Police Car**

In her Third Ground for Relief, Kennedy asserts she received ineffective assistance of trial counsel when her trial attorney failed to move to suppress the audio recordings of statements Kennedy made while waiting in the rear of a police car for police to finish their initial inspection of the murder scene.   Kennedy raised this as her Third Assignment of Error on appeal and the Third District decided it as follows:

**Third Assignment or Error**

[*P45]  In Kennedy's third assignment of error, she argues that her trial counsel was ineffective for failing to seek suppression of the statements that she made that were recorded in the sheriff's vehicle. Specifically, she argues that the statements would have been subject to suppression because Kennedy's will was "overborne" due to her age, her level of intoxication, her absence of experience in the criminal justice system, and the length of her detention in the "cold" police cruiser without proper clothing.

**Analysis** [footnote omitted]

[*P46]  When Deputy Dixon reached Kennedy's residence on the evening of the shooting, he escorted her out of the residence and placed her in the back of his cruiser. It was 20 degrees or below outside, but the cruiser's motor was running, with the heat turned up. Deputy Dixon activated an audio recorder that was in the vehicle and it recorded a number of statements that Kennedy made to herself. Notably, she made these statements, including many disparaging of Gary, and some self-serving statements such as never being in trouble before, without being asked any questions by anyone, as the officers were in the residence.

[*P47]  Although the statements would seem entirely voluntary, Kennedy argues on appeal that her will was overborne by, among other things, the cold temperature. However, Deputy Dixon testified that the heat was on in the vehicle and at one point he asked her if she was doing okay and she said no, but then she only inquired about her dogs. She did not mention being cold until after she voluntarily left the unlocked cruiser, went outside, and then returned to the cruiser. At that time she had already made numerous statements.

[*P48]  There is simply no indication of coercive police activity that would warrant suppression in this matter. *State v. Dukes*, 4th Dist. Scioto No. 16CA3745, 2017-Ohio-7204, ¶ 47, citing *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 19; citing *State v. McGuire*, 80 Ohio St.3d 390, 401, 1997-Ohio-335, 686 N.E.2d 1112 (1997).

[*P49]  Moreover, while Kennedy made some unfavorable statements, she also made some statements that the jury was allowed to hear that were favorable to the defense, such as she had never

been in trouble, that they would not hurt each other, that Gary
always played games, and that he wanted to die. Letting the
statements be admitted in evidence seemed to be part of the
defense's trial strategy. Again, simply because the strategy was not
successful does not amount to ineffective assistance. For all of these
reasons, Kennedy's third assignment of error is overruled.

*State v. Kennedy, supra.*

The Warden defends Ground Three on the merits (Return, ECF No. 21, PageID 2651-53).

Kennedy indicates the portions of her Reply pertinent to Ground Three are at PageID 2765-82

(Index, ECF No. 36, PageID 3038).  Kennedy claims she was initially locked into the back of the

cruiser, but then admits the door was only latched and she got out.  When Deputy Dixon put her

back in the car, he apparently did lock the door.  She claims there was no heat in the cruiser, but

the state courts chose to credit the testimony of Deputy Dixon that the motor was running and the

heat was cranked up.  Questions of the credibility of witnesses are for the trier of fact, here the

jury.

Kennedy claims she was suffering from hypothermia and refers to several items of

evidence which she claims prove this point.  When a federal habeas court is deciding whether to

defer to a state court decision on the facts, it is limited to the facts that are in the State Court

Record.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).  The additional evidence Kennedy has

submitted, both here and on other points, cannot be considered.

Kennedy claims that she was illegally recorded and that the recording misrepresents her

character, particularly the recorded cursing.  However, she admits her attorney did not know how

to suppress the recording.  Although Kennedy claims this shows ineffective assistance of trial

counsel, the Magistrate Judge disagrees.  There was no Fourth Amendment violation because she

was not being searched.  There was no Fifth Amendment violation because, as the Third District

found, she was not even being interrogated by the police, much less coerced into talking.  She

asserts the recording was inadmissible under Ohio Rules of Evidence as hearsay, but, as noted above, admissions by a party opponent are not hearsay under Ohio law. Ohio R. Evid. 801(D).[2]

Because there was no viable basis on which to suppress these recorded voluntary statements of the Petitioner, it was not ineffective assistance of trial counsel to fail to move to suppress them. The Third District's decision to this effect is a reasonable application of *Strickland* and Ground Three should be denied on the merits.


**Ground Four:  Failure to Instruct on Negligent Homicide**


In her Fourth Ground for Relief, Kennedy asserts the trial court violated her right to present a complete defense by refusing to instruct the jury on the lesser offense of negligent homicide. Kennedy presented this as her Fourth Assignment of Error on appeal and the Third District decided it as follows:

> **Fourth Assignment of Error**
>
> [*P50]  In Kennedy's fourth assignment of error she argues that the trial court erred by failing to instruct the jury on the "lesser included offense" of Negligent Homicide. Specifically, she argues that the issue for the jury to determine was her mental culpability, and that a jury could have found that she did not purposely kill her husband, but rather did so accidentally.
>
> **Analysis**
>
> [*P51]  The Supreme Court of Ohio has stated explicitly that "Negligent homicide is not a lesser included offense of murder." *State v. Koss,* 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), at paragraph 4 of syllabus. For this reason alone Kennedy's assignment of error is not well-taken.

---

[2] The Federal Rules of Evidence are not applicable to this case tried in state court.  But Fed.  R. Evid.  801(d) has the same provision.  Admissions of a party opponent have been admissible in common law courts since long before the rules of evidence were codified.

[*P52] Nevertheless, the defense requested a lesser-included instruction on "Negligent Homicide," and the trial court concluded that the evidence did not warrant it, reasoning as follows.

> THE COURT: Well, the — she would have to be negligent three times, I guess, is the problem I'm having. Multiple shots. And negligence to me implies, as I said, you know, yesterday, if I'm cleaning the gun and there's one in the chamber and it goes off and kills you, you've got a pretty good argument that I'm negligent.
>
> If I'm drunk and cleaning the gun and one goes off, I question whether I still get to be negligent. But — and even if I give you that, I can't clean the gun three times and shoot three times. So, I'm not seeing negligence, so that instruction is not going to be included.

(Tr. at 798).

[*P53] We agree with the trial court. Kennedy originally called 911 and said she shot her husband after he pointed a gun at her. She later told a story that she was asleep and found her husband having already been shot. Neither of these scenarios, even if believed, presents an accidental or negligent shooting. Therefore, Kennedy's fourth assignment of error is overruled.

*State v. Kennedy, supra.*

The Warden asserts Ground Four is not cognizable in habeas corpus because failure to instruct on a lesser included offense in a non-capital case does not violated the United States Constitution (Return, ECF No. 21, PageID 2653-56). Kennedy's Index indicates the pertinent portions of her Reply are at ECF No. 34-1, PageID 2783-85 (See ECF No. 36, PageID 3038).

The Third District found that, under Ohio law, negligent homicide is not a lesser included offense of murder. This Court is bound by that decision. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Even if negligent homicide were a lesser included offense of murder, the trial judge would not have been bound by the Constitution to give the instruction for two reasons. First, there is no

constitutional requirement to give a lesser included offense instruction in a non-capital case. *McMullan v. Booker*, 761 F.3d 662 (6th Cir. 2014); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990). Second, the facts would not have supported a verdict of negligence. As the trial judge found, you can shoot someone negligently once, but not three times.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018) (Thapar, J. concurring).

Ground Four should therefore be dismissed as non-cognizable. Alternatively, it should be dismissed on the merits because the right to present a complete defense does not include getting a jury instruction that the evidence does not justify.

**Ground Five: Denial of Complete Defense by Precluding Offer to Take a Polygraph Test**

In her Fifth Ground for Relief, Petitioner asserts her right to present a complete defense was violated when the trial court excluded her offer to take a polygraph examination. She presented her polygraph claim to the Third District as her Fifth Assignment of Error and that court decided it as follows:

**Fifth Assignment of Error**

[*P54]  In Kennedy's fifth assignment of error, she argues that the trial court erred by redacting a portion of her interview at the jail wherein she stated she would potentially be willing to take a polygraph examination. No polygraph was ever taken, and no stipulations were ever made as to the admissibility regarding a polygraph examination.

[*P55]  The Supreme Court of Ohio has previously rejected similar arguments where there was an offer made to take a polygraph but no polygraph was actually taken, and no stipulations pursuant to *State v. Souel*, 53 Ohio St.2d 123, 372 N.E.2d 1318 (1978), were made.

> The subject of polygraph examinations is complex, confusing to the jury, and not relevant to the issues at trial. Even if [the defendant] had successfully taken a polygraph examination, the trial court could refuse to admit this evidence. *State v. Jamison* (1990), 49 Ohio St.3d 182, 190, 552 N.E.2d 180, 188. Although polygraph examination results may be admitted for corroboration or impeachment, the parties must first jointly stipulate admissibility and follow certain explicit conditions. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 Ohio Op. 3d 207, 372 N.E.2d 1318; *State v. Levert* (1979), 58 Ohio St.2d 213, 12 Ohio Op. 3d, 389 N.E.2d 848. If polygraph examination results were not admissible, the trial judge had no reason to allow [a defendant's] asserted offer into evidence. See *State v. Woodruff* (1983), 10 Ohio App.3d 326, 10 OBR 532, 462 N.E.2d 457.

*State v. Jackson*, 57 Ohio St.3d 29, 37, 565 N.E.2d 549, 558 (1991).

[*P56]  We are compelled to follow precedent from the Supreme Court of Ohio, and in doing so here, Kennedy's fifth assignment of error is overruled.

*State v. Kennedy, supra.*

The Warden asserts Ground Five is not cognizable because questions of what evidence is admissible are questions of state law on which a habeas court is bound by state court decisions.

Kennedy notes the pertinent parts of her Reply are at ECF No. 34-1, PageID 2786-88.

The Third District cites controlling Ohio Supreme Court law to the effect that offers to take a polygraph examination are not admissible in evidence in circumstances such as are presented by this case where no polygraph examination was administered and there were no stipulations about the polygraph. In addition, the Supreme Court of the United States has never held an offer to take a polygraph must be admitted to protect a defendant's right to present a complete defense. Indeed, the federal courts been quite negative on the subject of the polygraph. See *Scheffer, supra.*

Ground Five should be dismissed as non-cognizable in habeas or, in the alternative, without merit as a complete defense argument.

## Ground Six:  Conviction on Insufficient Evidence

In her Sixth Ground for Relief, Petitioner asserts she was convicted on insufficient evidence. Kennedy raised this claim as her Sixth Assignment of Error on direct appeal and the Third District decided it, along with her manifest weight of the evidence claim, as follows:

> ### Sixth and Seventh Assignments of Error
>
>  [*P8]  In Kennedy's sixth assignment of error she argues that there was insufficient evidence presented to convict her of Murder. In her seventh assignment of error she argues that her conviction for Murder was against the manifest weight of the evidence.
>
> ### Standard of Review
>
>  [*P9]  Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, 818 N.E.2d 229, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

 [*P10]  By contrast,  in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required. Thompkins at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

 [*P11]  On appeal, Kennedy challenges her conviction for Murder in violation [**6]  of R.C. 2903.02(A), which reads, "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."


## Evidence Presented

 [*P12]  On March 10, 2017, at approximately 10:30 p.m., Kennedy called 911. When asked what the emergency was she stated, "Please. 8100 Township Road 110. My husband. I don't know what happened. We had a fight, but I don't know what happened. Please, come." (Tr. at 172). When the dispatcher asked what was wrong with her husband Kennedy said, "He looks like he's been shot." (Id. at 173). The dispatcher pressed Kennedy as to why she thought her husband had been shot, and Kennedy said, "Because he pulled out a gun and he turned it on me and I shot him." (Id. at 175). Kennedy clarified that she shot her husband, Gary, with a .22. (Tr. at 175). Kennedy stated she did not know where the gun was at that time. She said her husband was "gone," but then begged for help.

 [*P13]   Kennedy repeatedly requested assistance from the dispatcher, and from God, and she called her husband's name throughout the duration of the call, which lasted nearly 15 minutes before police arrived. Kennedy could be heard calling her husband's

name and telling him to "[g]et up," stating that he "can't go." (Tr. at 177-178).

[*P14] The dispatcher tried to engage Kennedy in conversation to get further information, but Kennedy mostly addressed Gary. Kennedy stated such things as, "* * * I'll always be true to you. I will always be true to you. * * * I will not cheat on you ever. I swear to God, I won't ever. * * * You are the love of my life. We don't have sex, but that's no big deal. * * * Please, help Gary." (Tr. at 181-82). Kennedy also stated, "I would not hurt you. That's crazy. I would not hurt you at all. Ever. Ever. * * * God, I would not hurt you. Here come the cops. Okay. Okay. There they are." (Id. at 182).

[*P15] Deputies from the Logan County Sheriff's Office responded to the residence, observing Kennedy in the kitchen upon their arrival. Kennedy was escorted out of the residence and into the back of a police cruiser by one officer while another officer went inside and found Gary on the floor of the kitchen, covered in blood from a gunshot wound in his chest. EMTs could not revive Gary at the scene.

[*P16] The scene was investigated and deputies located a .22 revolver partly covered in coffee grounds on the kitchen counter. There were coffee grounds on the kitchen floor and on the wall as well. The revolver was [**8] cocked and ready to fire another shot. Blood was located in the sink. It was tested and found to be consistent with Gary's. The parties stipulated that Kennedy washed her hands in the sink, but they did not stipulate as to when that took place.

[*P17] Aside from the bullet that struck Gary in the chest, a BCI investigator noted two other ballistic incidents at the scene. One bullet had gone out the kitchen window and struck the garage outside, while another appeared to have grazed Gary's back and then struck a television in the kitchen. Three shots were fired out of the .22 revolver, and there were six bullets remaining in it.1 The investigator indicated that the shots had all come from the same general area, the north end of the kitchen. (Tr. at 358).

[*P18] Several other weapons were located at the residence, including one that used .22 ammunition, but it was in the bedroom. There was also a 9mm in the bedroom that had a loaded magazine but no cartridge in the chamber.

[*P19] While officers and EMTs were dealing with Gary and the scene of the incident, Kennedy was in the backseat of a police cruiser. Her audio was recorded during that time, and she could be

heard talking to herself, though no officers were with her for the majority of the time she was in the vehicle. The audio recording was introduced into evidence wherein Kennedy said things to herself like, "Gary why did you do this?" (Tr. at 282). And "Goddamnit, I didn't kill him. I loved him. Jesus Christ. Oh. I want out of here. I did not do this to Gary, Goddamnit. God, I'm — Gary, you fucking shit. You did this to me. Goddamnit, you did this. You like it, you bitch. You like it. Goddamnit. You like it. Fucking jerk. So why did they come out? Why did they come out? I didn't call them. Gary didn't call them. No, no. Please somebody help me." (*Id.* at 284). Kennedy also said things such as she had never done anything wrong before, that Gary wanted to die, and that she had never been in trouble. She talked to herself for approximately an hour before she was transported to the jail. At one point she realized that the cruiser's door was unlocked and she got out and walked around the residence until she was escorted back to the cruiser by an officer.

 [*P20]  As Kennedy was being transported to the jail, she began to get violent, stating that she did not believe the police officers were actually officers. "You're fucking me over and I know it," she said. (Tr. at 311). She began to strike the windows with her feet. She struck the plexiglass divider with her head. She tried to get out of the moving vehicle. Officers had to pull over four times on the way to the jail to get her to calm down, to attach handcuffs to her, and one officer actually had to sit in the back with her. Officers indicated that Kennedy appeared to be very intoxicated.

 [*P21]  Kennedy was interviewed at the jail several hours after the incident to allow alcohol to leave her system. During the interview Kennedy indicated that both she and Gary were drinking that night, and that she had a good evening with Gary until she saw him looking at pornography on his tablet. Kennedy indicated that Gary had been forced to retire due to looking at pornography at work so it irritated her. Kennedy indicated that she then went to bed and when she woke up, she went into the kitchen and Gary was on the ground with blood coming out of his mouth. Kennedy indicated she did not know what happened to Gary.

 [*P22]  As for Gary, his body was examined by the Montgomery County Coroner's Office. The autopsy revealed that Gary received a gunshot wound in his upper right chest. The bullet went through the trachea and the ascending thoracic aorta, the largest artery in the body. It then went through the descending thoracic aorta, through the left lower lobe of the lung. The bullet lodged in the left chest cavity. (Tr. at 447). The forensic pathologist indicated that Gary may have been conscious for a minute or two after suffering the

wound, but not much more. The autopsy also revealed a scrape on Gary's back that was consistent with a grazing bullet.

## Argument and Analysis

[*P23]  On appeal, Kennedy argues that there was insufficient evidence presented to convict her of Murder and that her conviction was against the manifest weight of the evidence. More specifically, she contends that the State did not establish that Kennedy "purposely" shot her husband with the intent to kill him. She contends that the crime scene was open to interpretation and Kennedy's own "drunken emotional statements" were not sufficient to convict her, especially since she said in her interview that she could not remember the incident, and minutes after being placed in the cruiser she could not remember having called the police.

[*P24]  Purpose is defined in R.C. 2901.22(A) as follows.

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

[*P25]  Purpose can be established by circumstantial evidence. *State v. Nicely,* 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988). "The element of purpose required by R.C. 2903.02 may be presumed where the natural and probable consequences of a wrongful act are to produce death." *State v. Shue,* 97 Ohio App.3d 459, 466, 646 N.E.2d 1156 (9th Dist. 1994), citing *State v. Robinson,* 161 Ohio St. 213, 118 N.E.2d 517 (1954), paragraph five of the syllabus.

[*P26]  In this case, Kennedy gave conflicting stories as to what happened on the evening in question. She first told the dispatcher that she shot Gary because he had pulled a gun on her, then she later said she did not know what happened. When she was seated on her own in the cruiser, she made statements disparaging Gary. She also made self-serving statements like she had never done anything wrong and had never been in trouble.

[*P27]  The evidence indicated that three shots were fired out of the .22 revolver, all from the same general area. One of those shots grazed Gary's back, and another struck him in the chest, killing him. A jury could certainly infer from this that Kennedy intended to kill

Gary when she shot at him three times, once specifically in the chest. The revolver was also found cocked, ready to shoot a fourth time. In addition, the coffee grounds on the floor, the wall, and the murder weapon indicated some kind of struggle.

[*P28] Combining this with Kennedy's own indication that she and Gary were the only people in the home, that they had argued earlier that evening, and her conflicting statements as to not knowing what happened to Gary and saying she shot him because he pulled a gun on her, there was sufficient evidence to find that Kennedy purposely killed Gary.

[*P29] We also cannot find that her conviction for Murder was against the manifest weight of the evidence. While Kennedy argues the evidence from the scene was subject to interpretation, if evidence is susceptible to more than one construction, a reviewing court is bound to give it the interpretation consistent with the verdict and judgment. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d Appellate Review, Section 60, at 191-192 (1978); see also *State v. Johnson,* 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, ¶ 44, 41 N.E.3d 104. Based on the evidence presented we cannot find that the jury clearly lost its way or created a manifest miscarriage of justice in convicting Kennedy of Murder. Therefore, her sixth and seventh assignments of error are overruled.

*State v. Kennedy, supra.* The Warden defends Ground Six on the merits, asserting this Court should defer to the decision of the Third District (Return, ECF No. 26, PageID 2658-64). Kennedy's Index indicates the pertinent parts of her Reply are at ECF No. 34-1 and 34-2, PageID 2789-2843 (See ECF No. 36, PageID 3038).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold

the jury verdict if any rational trier of fact could have found the
defendant guilty after resolving all disputes in favor of the
prosecution. Second, even were we to conclude that a rational trier
of fact could not have found a petitioner guilty beyond a reasonable
doubt, on habeas review, we must still defer to the state appellate
court's sufficiency determination as long as it is not unreasonable.
See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

We have made clear that *Jackson* claims face a high bar in federal
habeas proceedings because they are subject to two layers of judicial
deference. First, on direct appeal, "it is the responsibility of the jury
-- not the court -- to decide what conclusions should be drawn from
evidence admitted at trial. A reviewing court may set aside the jury's
verdict on the ground of insufficient evidence only if no rational trier
of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
And second, on habeas review, "a federal court may not overturn a
state court decision rejecting a sufficiency of the evidence challenge
simply because the federal court disagrees with the state court. The
federal court instead may do so only if the state court decision was
'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012) (per curiam); *Parker v. Matthews*, 567 U.S. 37,

43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

The Third District applied the correct federal standard in that *Thompkins* and *Jenks* adopt

the *Jackson* and *Winship* standards.  Petitioner's burden is to show the Third District's decision

was an unreasonable application of that standard. To do so, she argues that her admission in the 911 call that she shot the victim does not amount to an admission of a purpose to kill him. It is true that she nowhere admits it was her intention to kill him. But a jury could reasonably infer from the fact that she pointed a gun at him and fired three times that her purpose was lethal. Federal habeas courts do not re-weight credibility or discard reasonable inferences drawn by a jury from admissible evidence.

Petitioner spends a good deal of this portion of her Reply rehearsing arguments about whether Deputy Dixon did or did not drive with his window open. This is not relevant to whether the State proved purpose to kill.

In some portions of this part of the Reply, Petitioner makes statements of fact. For example, she states the .22 caliber firearm that was the murder weapon was Gary's gun that he used to scare coyotes and shoot rats. PageID 2799. A habeas petitioner cannot testify to facts outside the record in the course of making an argument in a reply; the habeas court is limited to the evidence that was before the state courts. *Pinholster, supra*.

In other portions of the Reply, Kennedy argues what the proper impact of the *corpus delicti* rule should have been. This is completely irrelevant to the sufficiency of the evidence claim. And the *corpus delicti* rule is not a matter of federal constitutional law. She also cites at length from the Federal Rules of Evidence, which are not applicable in a state trial.

The last part of this portion of the Reply argues the court had no jurisdiction over the firearm specification on Count 2. This also has nothing to do with the sufficiency of the evidence claim.

**Ground Seven: Conviction Against the Manifest Weight of the Evidence**

In her Seventh Ground for Relief, Kennedy asserts her conviction is against the manifest weight of the evidence presented. This Ground does not state a claim under the Constitution upon which relief can be granted. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). On that basis, Ground Seven should be dismissed.

**Ground Eight: Failure to Disclose Favorable Evidence and Unconstitutional Seizure of Evidence**

In her Eighth Ground for Relief**,** Kennedy asserts that the failure to disclose prior to trial that Deputy Dixon recorded her statements made in the back of his cruiser on a personal recording device violated her Fifth and Fourteenth Amendment rights. Further, she asserts, using personal equipment was so far outside the policies of the Logan County Sheriff's Department that it violated her Fourth Amendment right to privacy.[3]

The Warden asserts Ground Eight is procedurally defaulted because, although it could have been raised on direct appeal, it was not (Return, ECF No. 21, PageID 2665). To the extent it depends on facts outside the record, it could have been brought in Kennedy's petition for post-conviction relief under Ohio Revised Code § 2953.21, but was not. Finally, to the extent the claim is alluded to as a claim underlying the assertion of ineffective assistance of trial counsel in the post-conviction petition, it is again procedurally defaulted by Kennedy's failure to appeal denial of that petition. *Id.*

---

[3] Kennedy also claims these actions violated her rights under Article I, § 10, of the Ohio Constitution, but state constitutional rights claims are not cognizable in federal habeas corpus.

**Petitioner's Asserted Defenses to Procedural Default**

Kennedy's Index refers the Court to ECF No. 34-2 and 34-3 at PageID 2857-73 for the portions of her Reply pertinent to Ground Eight She begins this section by stating "Petitioner's defense for procedural defaults and Rule 26 are proven under:  Explanations for Excusing Procedural Defaults, Rule 26, and *Res Judicata* in this traverse."  (ECF No. 34-2, PageID 2857). Her Index shows that section of the Reply/Traverse is at ECF No. 34, PageID 2725-54. (See ECF No. 36, PageID 3038).

Her first excuse is that the microphone provided to defense was inadequate.  PageID 2725. She claims that because she did not have the trial transcript until July 2020, she was prevented from assisting in the appeal. PageID 2726.  She admits her appellate counsel, Mr. Parker, did not raise these new claims which subjected her to *res judicata*. PageID 2726-27.  She was prevented from adding new claims in post-conviction because her post-conviction counsel, Stephen Hardwick of the Ohio Public Defender's Office, would not add them.  She accuses both Mr. Parker and Mr. Hardwick of ineffective assistance. PageID 2728.

Kennedy next asserts she was "unavoidably prevented" from filing a Rule 26(B) application because she did not have a transcript.  She did not know of problems that occurred at the trial because she could not hear much of it, asserting this should excuse any failure to make contemporaneous objections. PageID 2828-29.  She infers from her own difficulty hearing that the jury also could not hear and therefore could be easily misled. *Id.*

Petitioner cites no place in the transcript where any juror complained of being unable to hear, where her counsel noted problems with the microphone, etc.  All these statements of fact are

her own attempt to add her own uncross-examined and unsworn testimony to the record now.

Kennedy asserts that if she could find all the claims and errors she is making now, it must have been ineffective assistance of trial counsel, appellate counsel, and post-conviction relief counsel that they did not find them before. PageID 2732-33. Kennedy provides several pages of citations about not applying *res judicata* in habeas corpus. PageID 2733-34.

Kennedy admits she never filed an application under Ohio R. App. P. 26(B) to raise her claims of ineffective assistance of appellate counsel and offers as excuses that, although Mr. Parker told her how to file a 26(B), he did not send her the transcripts, court records, and related paperwork which she claims she needed to file the 26(B). PageID 2735-39.

Kennedy then includes a January 2021 statement from Buddy Risner about the conditions at trial (PageID 2740-41), a similar statement from Gloria Risner (PageID 2742), and then correspondence from her appellate counsel, John Parker (PageID 2743-54).

**Standard of Review for Procedural Default Defense**

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights

claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

> "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*.

> Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer

available at the time the federal petition is filed because of a state procedural rule. *Id*.

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).   A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

At a number of places in her Reply, Petitioner asserts that it would constitute a

"fundamental miscarriage of justice" for the Court to fail to reach the merits of one or more claims. Although this phrase is general, the Supreme Court has made it clear the phrase is synonymous with actually innocent. *Calderon v. Thompson*, 523 U.S. 538, 557-58 (1998) (holding that "avoiding a miscarriage of justice as defined by our habeas corpus jurisprudence" requires "a strong showing of actual innocence"); see *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). A strong showing of actual innocence will act to excuse a procedural default. If a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005), quoting *Schlup*, 513 U.S. at 324. The Supreme Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321. Kennedy has presented no new evidence of the type required by *Schlup*. Instead she reinterprets the evidence already presented. She has not shown actual innocence sufficient to overcome her procedural defaults.


**Application to Ground Eight**


As Kennedy admits, Dixon's use of personally-owned recording equipment to record what she said in the backseat of his cruiser while officers were tending to the scene was revealed at trial.

Thus the facts to ground the claim were in the appellate record, but no such claim was made on direct appeal. Kennedy claims this is excused by the ineffective assistance of appellate counsel, Mr. Parker, who did not include this claim. Ineffective assistance of appellate counsel can be excusing cause for failure to include an assignment of error later brought in federal habeas. However, to use that excuse, a petitioner must present the ineffective assistance of appellate counsel claim to the state courts first. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Under Ohio law, ineffective assistance of appellate counsel claims must be brought in a Rule 26(B) application for reopening[4], which Kennedy never filed. Her excuse for that default is that she did not have the records or transcripts within the ninety days after the Third District's decision to prove her claims. But she did not need the transcript to plead those claims. She knew how Dixon recorded her statement at the time of trial and she knew it was an issue Parker had not raised. Had she filed the 26(B), the Third District had already itself received and considered the transcript when it decided the direct appeal and could have referred to it.

Because Kennedy had appointed counsel on appeal and the Public Defender as counsel in post-conviction, the Court assumes[5] she was found to be indigent and was therefore entitled to have a free copy of the transcript as needed for appeal. Under the Equal Protection Clause, the State cannot discriminate against the poor by failing to provide the necessary transcript. *Griffin v. Illinois*, 351 U.S. 12 (1956). But one copy is not two copies and Kennedy cannot excuse her failure to file a 26(B) Application by her not having a transcript.

Moreover, this Court is not persuaded that failing to raise this claim on appeal was

---

[4] *State v. Murnahan*, 63 Ohio St. 3d 60 (1992). "In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell,* 693 F.3d 555, 564 (6th Cir. 2012).

[5] If this assumption is incorrect, Kennedy could have obtained a transcript directly from the court reporter by ordering and paying for it.

ineffective assistance of appellate counsel. The Court is unaware of any case law holding that one has a right of privacy in statements made in the rear of a police cruiser where one is being held on suspicion of having just shot one's husband. As the Third District held, Kennedy was not being interrogated and thus there was no Fifth Amendment violation involved. With the advent of smartphones, audio and video recording capability has become ubiquitous. There is no claim made that Dixon's recording device was defective or that the recording actually made was not authentic. If Dixon had been in the cruiser and heard Kennedy's admissions directly with his ears, there is no doubt he would have been allowed to testify what he remembered of what he heard. But the recording accuracy of contemporary audio recording machines is plainly better and therefore more persuasive than the human memory standing alone. Skeptics on that point should ask Derek Chauvin.

Ground Eight should be dismissed as procedurally defaulted.

**Ground Nine: Ineffective Assistance of Trial Counsel by Denial of the Right to Testify in Her Own Defense**

In her Ninth Ground for Relief, Kennedy claims her defense lawyer prevented her from testifying at trial. However, in her supporting facts, she admits that this was a matter of trial strategy with her lawyer advising her strongly not to expect to testify and in fact not to talk about her version of events with others who might "snitch" on her.

A defense lawyer cannot prevent her client from testifying by simply not calling her to the stand because the right to testify in one's own defense is protected by the Sixth Amendment. But the record here is devoid of any evidence that Kennedy attempted to override her counsel's advice about testifying. Defense counsel McFall indicated her intention not to call any witnesses during

the evidence sidebar (Transcript, State Court Record, ECF No. 20-4, PageID 2334). A defendant is presumed to have waived her right to testify unless the record contains evidence indicating otherwise. *Hodge v. Haeberlin,* 579 F.3d 627, 639 (6th Cir. 2009), citing *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

As to whether counsel's advice to Kennedy not to testify was bad advice, that claim was never fairly presented to the Ohio courts, either on direct appeal or in post-conviction. Ineffective assistance of appellate counsel does not excuse this default because advising a client not to testify in her own defense is well within the parameters of effective assistance of trial counsel because of exposure to cross-examination and the ability to get Kennedy's version of events before the jury by allowing the cruiser recording and Watson interview to be heard by the jury. Therefore it was not ineffective assistance of appellate counsel to fail to raise this as an assignment of error. Attorney Hardwick's failure to raise this in post-conviction (where non-record evidence of conferences between Kennedy and McFall could have been presented) is not excusing cause because the Sixth Amendment right to effective assistance of counsel does not extend to post-conviction proceedings and this claim does not come within the exception to that rule recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).

Ground Nine should therefore be dismissed as procedurally defaulted.


**Ground Ten:  Ineffective Assistance of Trial Counsel:  Failure to Present Photographs**


In her Tenth Ground for Relief, Kennedy asserts her trial attorney provided ineffective assistance when she "failed to submit as evidence photos from the Logan County Sheriff Department showing petitioner's badly bruised wrists and forearms and bruising on her back."

Further omitted evidence includes testimony from jail staff as witnesses to her difficulty speaking and swallowing during the four or five days she was incarcerated there and a recording showing how hoarse Kennedy was in the aftermath of the shootings. Finally, she argues that counsel failed to present evidence of the broken ribs she believed that she had.

The Warden asserts this claim is procedurally defaulted because it has never been fairly presented to the Ohio courts (Return, ECF No. 21, PageID 2670). Because this claim relies on evidence that is outside the direct appeal record, it would have to have been presented in Kennedy's petition for post-conviction relief, but was not. As with Ground Nine, a claim of ineffective assistance of post-conviction counsel will not excuse this omission.

Kennedy's Index directs the Court to ECF No. 34-3, PageID 2881-92 as the pertinent portion of her Reply on this claim. Instead of discussing the evidence mentioned in the claim, Kennedy presents what she herself characterizes as "new" evidence: to wit, what is filed at ECF No. 9-4, PageID 140-43 and Gary Kennedy's purported confession, in connection with a 1996 domestic violence case, that he had attempted to kill Rosalie Kennedy. PageID 140-43 are various documents from the Case of *State of Ohio v. Gary Kennedy*, Case No. 97-CRB, in the Bellfontaine Municipal, Court showing that Marc Triplett, who was Kennedy's co-counsel at trial in this case, had represented Gary Kennedy twenty years before and that Judge Goslee, the trial judge in this case, had been an assistant city prosecutor in the prior case. The location of the supposed confession in the record is not given. Kennedy claims that she did not receive these materials from the 1997 case until they were sent to her by post-conviction counsel in 2020 and asserts this excuses her procedural default in not presenting this claim earlier.

This argument displays Kennedy's fundamental misunderstanding of habeas corpus proceedings. Habeas corpus does not provide an opportunity to re-try a state criminal case with new evidence. If Petitioner believes that this new evidence warrants a new trial, she can present

it to the Logan County Court of Common Pleas as part of a motion for new trial. Ohio law provides no absolute time limit on such proceedings, although such a motion presented more than 120 days after the verdict requires a showing of due diligence in pursuing the new evidence. If a habeas petitioner presents new evidence to the state courts and those courts consider it on the merits, then *Pinholster* will not prevent a federal habeas court from considering it subsequently on a habeas petition. But the claim must first be exhausted in the state courts.

Moreover, the claim as presented in the Reply has no apparent merit. Kennedy admits that all counsel and Judge Goslee were aware of the prior case and determined it did not present a disqualifying conflict of interest either for Judge Goslee or Mr. Triplett (Reply, ECF No. 34-3, PageID 2882). She goes so far as to accuse all of them of conspiring against her on this issue. *Id.*

The Magistrate Judge agrees that these facts do not present a disqualifying conflict of interest. Particularly in a small jurisdiction[6], it would be unusual for attorneys practicing in the criminal justice area not to have multiple contacts with the same family if that family were involved in criminal cases. There is nothing in the record (at least cited by) Kennedy which would indicate Triplett had any client confidences from Gary Kennedy which his representing Rosalie Kennedy twenty years later would have tempted him to reveal. And nothing about Judge Goslee's involvement with both parties as a public official is disqualifying.

Kennedy argues that if the facts of the 1997 case had been presented to the jury, they would have seen the parallels to the 2017 situation: heavy drinking by Gary on both occasions when he tried to kill his wife because she confronted him over inappropriate behavior with images of other women (ECF No. 34-3, PageID 2885). That is Kennedy's theory now, but she references no place in the record where she presented that theory to the jury. Her claim at trial was not self-defense

---

[6] As of the 2010 census, the population was 45,858.

but that the killing was negligent.

In any event, Kennedy presents nothing in her Reply to show that Ground Ten as pleaded is not procedurally defaulted. Ground Ten should be dismissed on that basis.

## Ground Eleven:  Ineffective Assistance of Counsel for Failure to Subpoena Evidence

In her Eleventh Ground for Relief, Kennedy asserts her trial attorney provided ineffective assistance of trial counsel when she failed to subpoena Kennedy's shirt to show blood stains on the back of the shoulder. The Warden asserts this claim is procedurally defaulted because it was never fairly presented to the Ohio courts. Although the failure to subpoena the shirt is on the record and the claim could therefore have been raised on direct appeal, it was not. Kennedy cannot rely on ineffective assistance of appellate counsel to excuse this failure because she has never filed a 26(B) application to have the state courts adjudicate that claim. *Edwards v. Carpenter, supra.*

Kennedy's Index directs the Court to ECF No. 34-3, PageID 2893-94 for discussion of this claim. Those pages offer no excuse for the default other than has already been dealt with above. Ground Eleven should therefore be dismissed as procedurally defaulted.

## Ground Twelve:  Ineffective Assistance of Trial Counsel:  Failure to Subpoena Character Witnesses

In her Twelfth Ground for Relief, Kennedy asserts Attorney McFall provided ineffective assistance of trial counsel when she failed to subpoena character witnesses. The Warden asserts this claim is procedurally defaulted because it has never been fairly presented to the Ohio courts (Return, ECF No. 21, PageID 2674). Kennedy's Index directs the Court to consider ECF No. 34-

3, PageID 2895-96 as the relevant portion of the Reply. At that place in the Reply, she offers no excuse for her failure to present this claim in post-conviction, which would have been required since the claim depends on evidence outside the record, to wit, which character witnesses would have given what character evidence.

Ground Twelve should therefore be dismissed as procedurally defaulted.


**Ground Thirteen: Denial of Counsel of Choice**


In her Thirteenth Ground for Relief, Petitioner claims she was denied representation by her counsel of choice, Sarah Schregardus, who was forced by co-counsel Tina McFall to withdraw. The Warden asserts this claim is procedurally defaulted because it could have been adjudicated on the appellate record but was not raised as an assignment of error (Return, ECF No. 21, PageID 2676). Kennedy's Index directs the Court's attention to ECF No. 34-3, PageID 2897-2911 as the relevant portion of her Reply.

Instead of responding to the procedural default defense, Kennedy adverts to the same new evidence and claim she made at Ground Ten. It is not relevant to Ground Thirteen.

Then at PageID 2898 she claims she had a meeting with McFall and Triplett on October 30, 2017, at which McFall demanded Kennedy fire Schregardus because McFall had done all the work on the case and "Sarah doesn't have a clue."

The record shows that on November 6, 2017, Sarah Schregardus formally moved to withdraw, saying only that the matter had been discussed at the final pre-trial conference on October 30, 2017 (State Court Record, ECF No. 20, Ex. 27). The transcript of that conference shows that Ms. Schregardus had discussed the matter with Ms. Kennedy and agreed that it was in

Kennedy's best interests for her to withdraw (Transcript, ECF No. 20-3, PageID 1566). On the record Judge Goslee indicated Ms. McFall had been brought into the case because Ms. Schregardus did not have the qualifications to act as appointed counsel in a murder case. *Id.* at PageID 1571. Petitioner was in open court at the time these comments were made and did not make any objection.

The issue of counsel of choice was available to be adjudicated on the direct appeal record, but was not pleaded as an assignment of error on appeal. Kennedy cannot rely on ineffective assistance of appellate counsel to excuse that default because she has defaulted on any ineffective assistance of appellate counsel claim as well by not filing a 26(B) application.

Ground Thirteen should therefore be dismissed as procedurally defaulted.

## Ground Fourteen: Ineffective Assistance of Trial Counsel: Failure to Call Psychiatric Expert

In her Fourteenth Ground for Relief, Kennedy claims she received ineffective assistance of trial counsel when Attorney McFall failed to call or even hire an expert to explain "the psychiatric and trauma aspects of petitioner on the night in question." Petitioner claims she had no memory of the events of that night except that she remembered finding her husband on the floor dying and trying to resuscitate him with CPR.[7] She claims her memory did not return for five days and her use of obscenity during the 911 call was uncharacteristic. She also posits the expert could have testified to the effects being in the, by her accounts, very cold cruiser "could have on a person such as loss of memory, loss of speech, loss of focus, clouded thinking and even hallucinations are just a few."

The Warden asserts Ground Fourteen is procedurally defaulted for failure to raise it on

---

[7] Cardiopulmonary resuscitation.

direct appeal and for failure to appeal from denial of the post-conviction petition (ECF No. 21, PageID 2678-79). Kennedy's Index points the Court to ECF No. 34-3 and 34-4 at PageID 2912-13 as pertinent portions of her Reply. She does not point to any excusing cause and prejudice other than is dealt with above. On the merits of the claim, Kennedy is completely speculative arguing without any evidence that a psychiatrist could have explained all of her behavior in terms either of trauma suffered when her husband tried to kill her, as she posits what happened, or from hypothermia. However, she has produced no evidence that any expert would have thus testified. Aside from procedural default, Ground Fourteen also fails on the merits and should be dismissed on both bases.

**Ground Fifteen: Search Without a Warrant**

In her Fifteenth Ground for Relief, Kennedy claims her Fourth and Fourteenth Amendment rights were violated when Sheriff's Deputies took photographs inside her home on the night of Gary Kennedy's death. She also claims that failure to identify who took the pictures until trial violated her Sixth and Fourteenth Amendment rights.

The Warden asserts that Ground Fifteen is not cognizable in habeas on the basis of *Stone v. Powell,* 428 U.S. 465 (1976), which held federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an

unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6ᵗʰ Cir. 1982). The Ohio mechanism of a motion to suppress was fully available to Kennedy to contest the obtaining of these photographs, but she never filed such a motion. It is unlikely that such a motion would have been granted because Kennedy specifically called the police to the house in the 911 call.

Kennedy's Index directs the Court to ECF No. 34-4, PageID 2914 as the relevant portion of the Reply on this claim. At that point she argues only the merits of her claim and does not mention *Stone*. She correctly cites *Mapp v. Ohio*, 367 U.S. 643 (1961), for the proposition that the exclusionary rule as an enforcement mechanism for the Fourth Amendment applies to the States, but *Stone* prevents those claims from being litigated in habeas if the State provides an appropriate mechanism for doing so.

Kennedy's Fifteenth Grounds should be dismissed as non-cognizable in habeas in light of *Stone*.

**Ground Sixteen: Ineffective Assistance of Counsel: Failure to Reveal Potential Conflict of Interest**

In her Sixteenth Ground for Relief, Kennedy complains that one of her trial attorneys, Marc Triplett, did not tell her until "just days" before her trial began that he had represented her husband in the domestic violence misdemeanor case twenty years before. The Warden asserts this claim is procedurally defaulted because it was never presented to the Ohio courts.

The portion of Kennedy's Reply addressing this Ground for Relief is at ECF No. 34-4, PageID 2915-28 (Index, ECF No. 36, PageID 3038). Much of the discussion is about how various attorneys came into and then departed from the case. When she finally turns to Triplett's representation of Gary Kennedy in the domestic violence case, she infers from that fact that he had

access to all sorts of information about Gary Kennedy (ECF No. 34-4, PageID 2920). She again refers to a supposed confession by Gary Kennedy of choking her at the time of the domestic violence case, but gives no record reference to where it appears.

Triplett's representation of Gary Kennedy in the domestic violence case twenty years earlier did not disqualify him from representing Rosalie Kennedy because there is no evidence of record of any ongoing relationship between Triplett and Gary Kennedy. As with most misdemeanor cases, it is probably that the representation was for one case only; at least there is no evidence to the contrary. Because there was no disqualifying conflict of interest, Triplett did not provide ineffective assistance of trial counsel by disclosing the facts a few days before trial. Even if there had been a conflict of interest, Rosalie Kennedy knew of the facts which she claims created the conflict before the trial but never complained at that time, so no record of her concern would have been available for the appellate court to adjudicate the issue. Since there was insufficient evidence in the appellate record to decide the issue, it would have to have been presented in the post-conviction petition. But, as we have already seen, issues raised there are procedurally defaulted because no appeal was taken. Because this is not a substantial ineffective assistance of trial counsel claim, Hardwick's failure to raise it in post-conviction does not come within the *Martinez/Trevino* exception to *Coleman*.

Kennedy's Sixteenth Grouind for Relief should therefore be dismissed as procedurally defaulted.


**Ground Seventeen: Failure to Disclose Exculpatory DNA Test Results**


In her Seventeenth Ground for Relief, Kennedy claims that DNA testing of the murder

weapon revealed it had been handled by someone else. Although prosecutors admitted Kennedy's DNA was not on the gun, they refused to disclose whose was. If true, this would set up a Due Process claim under *Brady v. Maryland*, 373 U.S. 83 (1963).

The Warden again asserts procedural default as a defense, claiming this DNA ground for relief has never been presented to the state courts. (ECF No. 21, PageID 2684). The relevant portion of the Reply is identified in the Index as appearing at ECF No. 34-4, PageID 2929-30. At that point in the Reply, Kennedy admits that no one else's DNA was found on the gun, that the tests were inconclusive because the DNA sample was consumed in testing. PageID 2929. Kennedy then complains that fingerprint identification was not attempted. She also attempts to change this ground for relief to ineffective assistance of trial counsel by blaming her trial counsel for not having fingerprint testing done. *Id.*

As her own admissions in the Reply confirm, Kennedy has no factual basis for her claim that there are exonerative DNA results that were not disclosed. Kennedy simply has not stated a case for prosecutorial misconduct under *Brady*. Moreover, she has never presented either her original Ground Seventeen or her ineffective assistance of trial counsel claim for not obtaining fingerprints to the state courts. Ground Seventeen as pleaded should be dismissed as procedurally defaulted. The Court should decline to entertain a new claim only introduced in a reply. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

**Ground Eighteen: Ineffective Assistance of Post-Conviction Counsel**

In her Eighteenth Ground for Relief, Petitioner asserts she received ineffective assistance

of post-conviction counsel, Stephen Hardwick, Assistant Public Defender, when he "failed to add vital facts, (Grounds 8-16) in the post-conviction petition even though petitioner requested this to be included" and failed to timely appeal.

The Warden asserts this Ground for Relief is not cognizable in federal habeas corpus because there is no constitutional entitlement to counsel in those proceedings (Return, ECF No. 21, PageID 2686-87). Kennedy's Index directs the Court to ECF No. 34-4, PageID 2931-35 for the pertinent portion of her Reply. There she outlines the claims she wanted included which Hardwick did not include and the parallels between the 1997 domestic violence case and this case which she believes would have persuaded the jury to her point of view.

As to the cognizability of the claim, Petitioner relies on M*artinez v. Ryan*, 566 U.S. 1 (2012). The Sixth Circuit has recently held that *Martinez* and *Trevino v. Thaler*, 569 U.S. 413 (2013), are applicable to the Ohio system for considering claims of ineffective assistance of trial counsel. *White v. Warden, Ross Corr. Inst.,* 940 F.3d 270 (6th Cir. 2019). But *Martinez* and *Trevino* did not extend the Sixth Amendment right to effective assistance of counsel. Instead, they held that when a habeas petitioner has no counsel in post-conviction or that counsel's performance meets the ineffective assistance standard of *Strickland*, that ineffectiveness will excuse a procedural default in presenting a substantial claim of ineffective assistance of trial counsel. In other words, there is no freestanding claim to habeas relief because post-conviction counsel was ineffective.

Therefore Kennedy's Ground Eighteen does not state a claim upon which habeas corpus relief can be granted and should be dismissed on that basis.

**Ground Nineteen:   Failure to Instruct on Lesser Included Offenses**

In her Nineteenth Ground for Relief, Kennedy claims the trial court's failure to instruct on the lesser included offenses of involuntary manslaughter and reckless homicide violated her Sixth and Fourteenth Amendment rights.  The Warden asserts Ground Nineteen is procedurally defaulted because it was never fairly presented to the Ohio courts or, in the alternative, is not cognizable (Return, ECF No. 21, PageID 2687-90).

Kennedy's Index directs the Court's attention to ECF No. 34-4, PageID 2936-40 as the pertinent portion of her Reply.  At those pages she argues how she could not possibly have shot the victim, according to her own forensic analysis.  Then she argues the merits of this claim for a lesser included instruction.

This is a claim evident on the face of the appellate record which should have been litigated on direct appeal but was not.  As excuse for procedural default, she reiterates her argument about how she was unavoidably prevented from filing a 26(B) Application because she did not get the transcripts and court records until July 2020.  The Magistrate Judge has previously rejected this excuse for failure to timely file the 26(B) application.

As to whether the claim is cognizable, Kennedy offers no analysis of Ohio law to show that either of these two proffered lesser-included offenses are in fact lesser included offenses by Ohio law.  She does not indicate anywhere in the record that her counsel asked for these instructions; failure to do so would violate the contemporaneous objection rule.  This would result in another procedural default of the claim at the trial court level.

On the merits, there is no constitutional requirement to give a lesser included offense instruction in a non-capital case.  *McMullan v. Booker*, 761 F.3d 662 (6th Cir. 2014); *Campbell v.*

*Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990). To show that jury instructions are contrary to federal law is "not easy because 'instructional errors of state law generally may not form the basis for federal habeas relief.'" *Keahey v. Marquis,* 978 F.3d 474 (6th Cir. 2020), citing *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993). To prevail, a habeas petitioner "must show that such a botched interpretation violated clearly established United States Supreme Court decisions. And even then, he still must show that the mistake violated concrete Supreme Court holdings," *Id.* citing *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013), not generalized principles, citing *Woods v. Donald,* 575 U.S. 312, 318 (2015).

Ground Nineteen should therefore be dismissed.


**Ground Twenty:  Judicial Bias**


In her Twentieth Ground for Relief, Kennedy claims her conviction should be set aside because the trial judge, William Goslee, was prejudiced against her.  She asserts Judge Goslee was

- *per se* disqualified because he served as prosecutor in her husband's domestic violence in 1997 (Ground 20(A));

- disqualified because he, like one of the jurors, knew the prosecutor's sister (Ground 20(B));

- disqualified for having incorrectly instructed the jury that their verdict had to be unanimous (Ground 20(C));

- disqualified for having forced Kennedy to give up her counsel of choice (Attorney Schregardus)(Ground 20(D));

- disqualified for having redacted portions of Deputy Sheriff Watson's interview of Kennedy (Ground 20(E));

- disqualified for not having told Kennedy that if she pleaded guilty to voluntary manslaughter, he would probably sentence her to three years imprisonment (Ground 20(F));

- disqualified for having interrupted defense counsel's cross-examination of Deputy Watson (Grounds 20(G));

- disqualified for having pressured the jury to decide the case more quickly than it would have (Ground 20(H)); and

- disqualified for having attempted to dissuade defense counsel from obtaining documents from the 1997 case (Ground 20(I)).

Because Petitioner added Grounds Twenty and Twenty-One to the case by a filing not labeled as a motion to amend, the Warden was not alerted to include a position or defense to these Grounds in the Return. Petitioner argues Ground Twenty at ECF No. 34-4, PageID 2941-52, according to her Index.

Judicial ethics in Ohio are embodied in the Code of Judicial Conduct adopted by the Supreme Court of Ohio, acting for the judiciary as a whole under the Modern Courts Amendment to the Ohio Constitution. Among the four Canons of Judicial Conduct is Canon 2 which provides "A judge shall perform the duties of judicial office impartially, competently, and diligently." The principal enforcement mechanism of the impartiality portion of this Canon is self-regulation: a judge is expected to voluntarily recuse himself or herself from a case when his or her impartiality could reasonably be questioned.

Recognizing that not every judge will be sufficiently self-aware to recuse when he or she ought to, Ohio law provides a back-up mechanism for seeking the involuntary disqualification of a judge.

For Common Pleas judges, the mechanism is by application to the Chief Justice of Supreme Court for a disqualification order. Judges who act unethically are also subject to disciplinary complaint made to the Supreme Court of Ohio.

Although Kennedy is correct in her assertion that the Fourteenth Amendment Due Process Clause guarantees litigants an impartial judge, the occasions when lack of impartiality have been found to require a conviction be set aside are very rare. Kennedy herself cites the leading case, *Tumey v. Ohio*, 273 U.S. 510 (1927), where Ohio's system of compensating lower court judges on a case-by-case basis and paying them double for a conviction than they were paid for an acquittal was held to violate the Constitution. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Supreme Court extended *Tumey* to require disqualification of a West Virginia supreme court justice whose seat on that court had essentially been "bought" by one of the litigants, but the justice refused to recuse himself. In *Williams v. Pennsylvania*, 579 U.S. ___, 136 S. Ct. 1899, 195 L. Ed. 2d 132 (2016), the Supreme Court extended *Caperton* to hold that a person who as district attorney approved seeking the death penalty may not later hear as appellate judge a post-conviction matter in the same case.

It is a long way from *Williams* to the instant case. In the first place, this is not the **same** case as the 1997 domestic violence case, but a case separated from it by twenty years. Second, a reasonable observer might conclude that if Judge Goslee had any actual subjective bias remaining from prosecuting the 1997 case, it would be in favor of Rosalie Kennedy who was the victim in that case. Kennedy, of course, argues the opposite, arguing Goslee let Gary Kennedy off too lightly by accepting a plea to disorderly conduct, but the actual facts for assessing the 1997 case are presented here only from Rosalie Kennedy's point of view.

That is one reason why relying on claims of bias after the fact are so potentially disruptive to

the trial system. Much has been recently written about implicit bias and how pervasive it is in the human subconscious, even that of judges. See JENNIFER L. EBERHARDT: BIASED: UNCOVERING THE HIDDEN PREJUDICE THAT SHAPES WHAT WE SEE, THINK, AND DO (2020). But as long as we have human judges, both those who preside and those who sit as jurors, the risk is inescapable. Judge Jerome Frank tellingly wrote:

> Democracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness. If, however, "bias" and "impartiality" be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will. The human mind, even at infancy, is no blank piece of paper. We are born with predispositions; and the process of education, formal and informal, creates attitudes in all men which affect them in judging situations, attitudes which precede reasoning in particular instances and which, therefore, by definition, are prejudices.... Interests, points of view, preferences, are the essence of living. Only death yields complete dispassionateness, for such dispassionateness signifies utter indifference....

> Much harm is done by the myth that merely by putting on a black robe and taking the oath of office as a judge, a man ceases to be human and strips himself of all predilections, becomes a passionless thinking machine. The concealment of the human element in the judicial process allows that element to operate in an exaggerated manner; the sunlight of awareness has an antiseptic effect on prejudices. Freely avowing that he is a human being, the judge can and should, through self-scrutiny, prevent the operation of this class of biases....

> Disinterestedness does not mean childlike innocence. If the judge did not form judgments of the actors in those courtroom dramas called trials, he could never render decisions.

*In re J. P. Linahan*, Inc., 138 F.2d 650, 651-54 (2nd Cir. 1943)(Frank, J.).

This is a major reason why the law requires that the issue of disqualification for bias be raised before trial, before it can poison all the trial results. When that is done, either the judge himself can recuse or a neutral outsider, the Ohio Chief Justice, can decide the issue and replace a judge

to prevent harm.  No such request for disqualification was ever made here.

Kennedy's excuse for not raising the issue before trial – that she did not have the paperwork from the 1997 case until July 2020 – is unpersuasive.  If she did not remember in 2017 that Judge Goslee prosecuted her husband twenty years before, why would she expect him to remember it and retain some bias from it?  It would certainly have been a far more prominent event in her life than in his; municipal prosecutors typically handle hundreds of cases per year.

Ground Twenty A is therefore procedurally defaulted for failure to present it prior to trial in a motion for recusal or application for disqualification and it also fails on the merits because it does not plead facts on which an objective observer would conclude Judge Goslee was unconstitutionally biased against Kennedy.

In Ground Twenty B, Kennedy claims Judge Goslee was disqualified because, like one of the jurors, he "knew" the prosecutor's sister.  This is not a matter that could have been raised pre-trial because it would have been unknown at the time.  But once it was revealed, there was no contemporaneous objection made to his continuing to preside.  Nor would such an objection have been justified.  The same analysis made as to Ground Twenty A applies even more strongly to Ground Twenty B.  Particularly in a small county, the fact that the sole General Division Common Pleas Judge knows the sister of the person prosecuting the case is hardly surprising.  "Knows" is an ambiguous and very broad term.  Does a judge "know" a lawyer in a disqualifying way if the judge has previously presided over a trial with that lawyer?

In Ground Twenty C, Kennedy claims Judge Goslee was disqualified because he instructed the jury that its verdict had to be unanimous, whether guilty or not guilty.  Kennedy seems to believe that as a defendant she was entitled to be acquitted if even one juror voted to acquit.  But that is not the law and Judge Goslee was completely correct in his unanimity instruction.  No

contemporaneous objection was made, but it would have been entirely in error. While judicial error in jury instructions is subject to correction on appeal, no such assignment of error was made here, presumably because it would have been utterly without merit. Indeed, the unanimity instruction Judge Goslee gave was not only correct, but virtually mandatory.

In Ground Twenty D, Kennedy asserts Judge Goslee should have been disqualified for having forced Kennedy to give up her counsel of choice, Sarah Schregardus. Again, no contemporaneous objection was made and on the face of the record, Attorney Schregardus withdrew without protest.

In Ground 20 E, Kennedy argues Judge Goslee should have been disqualified for having redacted portions of Deputy Sheriff Watson's interview of Kennedy (Ground 20(E)). This claim is procedurally defaulted for lack of contemporaneous objection or appeal.

In Ground Twenty F, Kennedy argues Judge Goslee was disqualified for not having told Kennedy that if she pleaded guilty to voluntary manslaughter, he would probably sentence her to three years imprisonment. Kennedy offers no evidence that that would have been a true prediction of sentence. Her own attorney told her that she would probably receive the maximum sentence of eleven years if she accepted the plea deal. From her description of her expectations, what Kennedy wanted was a promise of a three-year sentence. For a judge to make such a promise would have been totally unethical and made the plea agreement void. And again there was no contemporary objection or other later presentation of this claim to the Ohio courts.

In Ground Twenty G, Kennedy argues Judge Goslee should have been disqualified for interrupting defense counsel's cross-examination of Deputy Watson. Again, there was no contemporaneous objection or later presentation of this claim to the Ohio courts. Nor has Kennedy shown there would have been any merit to any such objection. Trial judges are not required to be

silent passive umpires. A trial judge may interject himself or herself into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation. There is no error where the trial court's comments can be construed as attempts to keep the parties focused on the issues related specifically to the crime charged and to prevent counsel from asking repetitive questions. *Mason v. Burton,* 2017 U.S. App. LEXIS 26088 (6th Cir. 2017), quoting *United States v. Powers*, 500 F.3d 500, 511-12 (6th Cir. 2007).

In Ground Twenty H, Kennedy argues Judge Goslee should be disqualified from having pressured the jury to decide the case quickly so that one of the jurors could make her 8:30 p.m. flight on the date of deliberation. There was no contemporaneous objection or later presentation of this claim to the Ohio courts.

Lastly in Ground Twenty I, Kennedy asserts Judge Goslee should have been disqualified for having attempted to dissuade defense counsel from obtaining documents from the 1997 case. It does not constitute bias for a judge to attempt to dissuade attorneys from engaging in acts that take time and are unlikely to produce useful results. Eventual discovery of those documents added nothing to what Judge Goslee and Marc Triplett remembered of the prior case and disclosed prior to trial. And once again there was no contemporaneous objection or later presentation of this claim to the Ohio courts.

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith*

*v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

In sum, each and every sub-claim in Ground Twenty is barred by Kennedy's failure to fairly present it to the Ohio courts. Each such sub-claim is also without merit; none of them discloses a disqualifying bias in the trial judge. Ground Twenty should be dismissed with prejudice.

**Ground Twenty-One:  Failure to Excuse a Biased Juror**

In her Twenty-First Ground for Relief, Kennedy claims she is entitled to habeas corpus relief because Judge Goslee did not excuse a biased juror, Mr. Sita. As with Ground Twenty, Respondent did not have notice to respond to this Ground. The Index refers the Court to ECF No. 34-5, PageID 3025-31 for the relevant portions of the Reply. At those pages of the Reply, she recounts Judge Goslee's efforts at rehabilitating this juror and she admits that at the end of the process, her attorney did not object to his being seated. Kennedy then attempts to transform the claim in to one of ineffective assistance of trial counsel for failure to object.

Ground Twenty-One pleaded as a trial error claim is procedurally defaulted for lack of a contemporaneous objection. As an ineffective assistance of trial counsel claim it is procedurally defaulted by failing to raise it on direct appeal. Whichever way the claim is construed, it should

be dismissed as defaulted.

**Conclusion**

In accordance with the foregoing analysis, the Magistrate Judge respectfully recommends the Amended Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 12, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

**NOTICE REGARDING RECORD CITATIONS**

The attention of all parties is called to S. D. Ohio Civ. R. 7.2(b)(5) which provides:

(5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

The Court's electronic filing system inserts in all filings hyperlinks to the place in the record which has been cited following this Rule. However, as with most computer systems, the CM/ECF program cannot read pinpoint citations which do not follow the Rule precisely. For example, the first pinpoint citation in ODRC's Reply reads "Plaintiff argues that he could not bring this action until "administrative remedies as (sic) are exhausted (sic)." (Doc. 80, PageId# 987)." The correct citation would have been Doc. No. 80, PageID 987." Because Defendant added the "#" symbol, the program failed to inset a hyperlink. Use of this software is mandated by the Judicial Conference of the United States and cannot be locally modified. **The parties are cautioned to comply precisely with S. D. Ohio Civ. R. 7.2(b)(5) in any further filings.**